Dennis Winters  CA Bar #89872
**Winters Law Firm**
23046 Avenida de la Carlota
Suite #600
Laguna Hills, CA 92653
Telephone: (714) 836-1381
Email: winterslawfirm@cs.com

Attorneys for Toyota Motor Credit Corporation

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
Sacramento Division**

| | |
|---|---|
| In re: | Case No.: 25-24357 |
|  | Motion Control: DW-1 |
| Kimberly Rae Egan | Chapter 7 |
|  |  |
|  | DATE: October 14, 2025 |
| Debtor. | TIME: 11:00 AM |
|  | COURTROOM: 6th Floor |
|  | DEPT: 32 |

### MOTION FOR RELIEF FROM AUTOMATIC STAY

Creditor, Toyota Motor Credit Corporation ("Toyota"), respectfully files this Motion for Relief from Automatic Stay pursuant to Local Rule 4001-1 in the pending Chapter 7 proceeding of Kimberly Rae Egan ("Debtor"), as follows:

1. On August 18, 2025, Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, and relief was ordered thereon.

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §157 (b)(2)(G) and §1334 and 11 U.S.C. §362(d).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and/or 1409.

4. Toyota is the holder of a claim against the Debtor arising from the purchase of a 2024 Toyota Tundra 4WD bearing the Vehicle Identification Number 5TFNC5DBXRX050706 (the "Vehicle") as detailed in the Retail Installment Sale Contract -- Simple Finance Charge (with Arbitration Provision) dated December 28, 2023 (the "Contract"). A copy of the Contract is attached as Exhibit "A" and hereby incorporated by reference. A copy of the results of a title search showing Toyota as a secured lienholder on the Vehicle is attached as Exhibit "B".

5. The Contract provides that in the event the Debtor defaults under its terms, Toyota would be entitled to repossess the Vehicle.

6. The Debtor has defaulted under the terms of the Contract by failing to make payments on time. A payment history is attached at Exhibit "C" and hereby incorporated by reference.

7. Toyota charged the account off on November 6, 2024. The balance at the time of charge off equaled $77,443.50 and was accelerated at that time. As of the filing of the instant motion, the Debtor is indebted to Toyota pursuant to the Contract in the total amount of $77,443.50. A declaration executed by a representative of Toyota is attached as Exhibit "D".

8. The Debtor's Statement of Intention indicates the Debtor retain the Vehicle but fails to explain how the debt will be addressed.

9. Toyota has no information concerning whether the Vehicle is insured with a policy naming Toyota as loss payee, as required pursuant to the terms of the Contract.

10. The Debtor has failed to, and cannot, provide Toyota with adequate protection for Toyota's interest in the Property.

11. For the reasons above, cause exists for granting Toyota relief pursuant to 11 U.S.C. §362(d)(1).

12. According to a search of the J.D. Power Used Car Guide conducted on September 3, 2025, the value of the vehicle is approximately $64,700.00. Therefore, no equity exists in the Vehicle. A copy

of the JD Power Used Car Guide valuation is attached as Exhibit "E" and is hereby incorporated by reference.

13. Because this is a Chapter 7 proceeding, there will be no reorganization of the estate, and the Vehicle therefore cannot be necessary to an effective reorganization.

14. For the reasons above, cause also exists for granting Toyota relief pursuant to 11 U.S.C. §362(d)(2).

15. In order to protect against further loss of Toyota's interest in the collateral due to the lack of adequate protection, Toyota requests a waiver of the 14-day stay of F.R.B.P. 4001(a)(4).

**WHEREFORE,** Toyota Motor Credit Corporation, respectfully requests this Honorable Court to enter an Order unconditionally and immediately modifying the automatic stay of 11 U.S.C. §362, allowing Toyota to proceed to enforce its rights against the Property, waiving the 14-day stay of F.R.B.P. 4001(a)(4), and granting Toyota such other and further relief as this Court shall deem just.

Respectfully Submitted,

By: */s/ Dennis Winters*
Dennis Winters  CA Bar #89872
Winters Law Firm
23046 Avenida de la Carlota
Suite #600
Laguna Hills, CA 92653
Telephone: (714) 836-1381
Email: winterslawfirm@cs.com
Attorney for Toyota Motor Credit Corporation

Filed 09/19/25    Exhibit "A"    T866960663-DP866960664 - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC.    Case 25-24357    Doc 15

LAW 553-CA-ARB-ea 3/23

# RETAIL INSTALLMENT SALE CONTRACT — SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| LIQUID SKY ENTERTAINMENT, INC.<br>8669 SALMON AVE 2419<br>KINGS BEACH, County of PLACER, CA 96143<br>Cell: N/A<br>Email: [redacted] | KIMBERLY EGAN<br>5757 CAMP FIRE WEST RD<br>SHERIDAN, County of PLACER, CA 95681<br>Cell: N/A<br>Email: N/A | GPI SAC-T, INC.<br>12747 FOLSOM BOULEVARD<br>FOLSOM, CA 95630 |

Exhibit "A"

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-in-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| New | 2024 | Toyota Tundra 4WD | 6 | 5TFNC5DBXRX050706 | Personal, family, or household unless otherwise indicated below<br>[X] business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $2,000.00 |
|---|---|---|---|---|
| 10.99 % | $ 27,896.39 (e) | $ 74,140.57 (e) | $ 102,036.96 (e) | $ 104,036.96 (e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| One Payment of | $ N/A | N/A |
| One Payment of | $ N/A | N/A |
| One Payment of | $ N/A | N/A |
| 72 Payments | $ 1,417.18 | Monthly beginning 02/11/2024 |
| N/A | $ N/A | N/A |
| One final payment | $ N/A | N/A |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

### STATEMENT OF INSURANCE

NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not to buy other insurance will not be a factor in the credit approval process.

**Vehicle Insurance**

| | Term | Premium |
|---|---|---|
| $ N/A Ded. Comp., Fire & Theft | N/A Mos. | $ N/A |
| $ N/A Ded. Collision | N/A Mos. | $ N/A |
| Bodily Injury $ N/A Limits | N/A Mos. | $ N/A |
| Property Damage $ N/A Limits | N/A Mos. | $ N/A |
| Medical N/A<br>N/A | N/A Mos. | $ N/A |
| Total Vehicle Insurance Premiums | | $ N/A |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X **A** _Egan_
Co-Buyer X **A** _K Egan_
Seller X **A** _[signature]_

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle(s) to arrive at the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). You understand that the amount quoted is an estimate. Seller agrees to pay the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s) to the lienholder or lessor of the trade-in vehicle(s), or its designee. If the actual payoff amount is more than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on page 5 of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in Trade-In Vehicle(s) or any refund. You agree to sign or provide any documents Seller reasonably requires to effect the transfer of the Trade-In Vehicle to Seller or its designee.

Buyer Signature X **B** N/A      Co-Buyer Signature X **B** N/A

**AUTO BROKER FEE DISCLOSURE**

If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:
☐ Name of autobroker receiving fee, if applicable: N/A

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X **C** _Egan_      Co-Buyer Signs X **C** _K Egan_

Filed 09/19/25    Case 25-24357    Doc 15

T866960663-DP866960664 - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC.

### ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

1. **Total Cash Price**
   - A. Cash Price of Motor Vehicle and Accessories .......... $ 70,009.00 (A)
     1. Cash Price Vehicle .......... $ 70,009.00
     2. Cash Price Accessories .......... $ N/A
     3. Other (Nontaxable) Describe N/A .......... $ N/A
     4. Other (Nontaxable) Describe N/A .......... $ N/A
   - B. Document Processing Charge (not a governmental fee) .......... $ 85.00 (B)
   - C. Emissions Testing Charge (not a governmental fee) .......... $ N/A (C)
   - D. (Optional) Theft Deterrent Device(s)
     1. (paid to) N/A .......... $ N/A (D1)
     2. (paid to) N/A .......... $ N/A (D2)
     3. (paid to) N/A .......... $ N/A (D3)
   - E. (Optional) Surface Protection Product(s)
     1. (paid to) N/A .......... $ N/A (E1)
     2. (paid to) N/A .......... $ N/A (E2)
   - F. EV Charging Station (paid to) N/A .......... $ N/A (F)
   - G. Sales Tax (on taxable items in A through F) .......... $ 5,081.82 (G)
   - H. Electronic Vehicle Registration or Transfer Charge
     (not a governmental fee) (paid to) AVRS .......... $ 33.00 (H)
   - I. (Optional) Service Contract(s)
     1. (paid to) N/A .......... $ N/A (I1)
     2. (paid to) N/A .......... $ N/A (I2)
     3. (paid to) N/A .......... $ N/A (I3)
     4. (paid to) N/A .......... $ N/A (I4)
     5. (paid to) N/A .......... $ N/A (I5)
   - J. Prior Credit or Lease Balance (e) paid by Seller to N/A .......... $ N/A (J)
     (see downpayment and trade-in calculation)
   - K. Prior Credit or Lease Balance (e) paid by Seller to N/A .......... $ N/A (K)
     (see downpayment and trade-in calculation)
   - L. (Optional) Debt Cancellation Agreement or Guaranteed Asset Protection Waiver $ N/A (L)
   - M. (Optional) Used Vehicle Contract Cancellation Option Agreement .......... $ N/A (M)
   - N. Other paid to N/A For N/A .......... $ N/A (N)
   - O. Other paid to N/A For N/A .......... $ N/A (O)
   - **Total Cash Price** (A through O) .......... $ 75,208.82 (1)

2. **Amounts Paid to Public Officials**
   - A. Vehicle License Fees .......... $ 611.00 (A)
   - B. Registration/Transfer/Titling Fees .......... $ 312.00 (B)
   - C. California Tire Fees .......... $ 8.75 (C)
   - D. Other N/A .......... $ N/A (D)
   - **Total Official Fees** (A through D) .......... $ 931.75 (2)

3. **Amount Paid to Insurance Companies** (Total premiums from Statement of Insurance) $ N/A (3)

4. ☐ State Emissions Certification Fee or ☐ State Emissions Exemption Fee .......... $ N/A (4)

5. **Subtotal** (1 through 4) .......... $ 76,140.57 (5)

6. **Total Downpayment**
   - A. Total Agreed Value of Property Being Traded-In (see Trade-In Vehicle(s)): .......... $ N/A (A)
     Vehicle 1 $ N/A        Vehicle 2 $ N/A
   - B. Total Less Prior Credit or Lease Balance (e) .......... $ N/A (B)
     Vehicle 1 $ N/A        Vehicle 2 $ N/A
   - C. Total Net Trade-In (A–B) .......... $ N/A (C)
     Vehicle 1 $ N/A        Vehicle 2 $ N/A
   - D. Deferred Downpayment Payable to Seller .......... $ N/A (D)
   - E. Manufacturer's Rebate .......... $ 1,000.00 (E)
   - F. Other N/A .......... $ N/A (F)
   - G. Other N/A .......... $ N/A (G)
   - H. Other N/A .......... $ N/A (H)
   - I. Cash, Cash Equivalent, Check, Credit Card, or Debit Card .......... $ 1,000.00 (I)
   - **Total Downpayment** (C through I) .......... $ 2,000.00 (6)
   (If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1J and/or 1K above)

7. **Amount Financed** (5 less 6) .......... $ 74,140.57 (7)

---

**OPTIONAL DEBT CANCELLATION AGREEMENT OR GUARANTEED ASSET PROTECTION WAIVER.** A debt cancellation agreement or guaranteed asset protection waiver (GAP waiver) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy debt cancellation or a GAP waiver, the charge is shown in item 1L of the Itemization of Amount Financed. See your agreement for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos.     N/A
                  Name of Agreement

I want to buy a debt cancellation agreement or GAP waiver.

Buyer Signs X  D   N/A

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1I.

I1 Company N/A
Term N/A Mos. or N/A Miles
I2 Company N/A
Term N/A Mos. or N/A Miles
I3 Company N/A
Term N/A Mos. or N/A Miles
I4 Company N/A
Term N/A Mos. or N/A Miles
I5 Company N/A
Term N/A Mos. or N/A Miles

Buyer X  E   N/A

**Trade-In Vehicle(s)**

1. Vehicle 1
Year N/A    Make N/A
Model N/A    Odometer N/A
VIN N/A
a. Agreed Value of Property       $ N/A
b. Buyer/Co-Buyer Retained Trade Equity $ N/A
c. Agreed Value of Property
   Being Traded-In (a–b)          $ N/A
d. Prior Credit or Lease Balance  $ N/A
e. Net Trade-In (c–d) (must be ≥ 0
   for buyer/co-buyer to retain equity) $ N/A

2. Vehicle 2
Year N/A    Make N/A
Model N/A    Odometer N/A
VIN N/A
a. Agreed Value of Property       $ N/A
b. Buyer/Co-Buyer Retained Trade Equity $ N/A
c. Agreed Value of Property
   Being Traded-In (a–b)          $ N/A
d. Prior Credit or Lease Balance  $ N/A
e. Net Trade-In (c–d) (must be ≥ 0
   for buyer/co-buyer to retain equity) $ N/A

Total Agreed Value of Property
  Being Traded-In (1c+2c)         $ N/A*
Total Prior Credit or Lease
  Balance (1d+2d)                 $ N/A*
Total Net Trade-In (1e+2e)        $ N/A*
(*See item 6A–6C in the Itemization of Amount Financed)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before __N/A__, Year __N/A__.

SELLER'S INITIALS    N/A

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Seller - Creditor may receive part of the Finance Charge.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

   > **GAP LIABILITY NOTICE**
   > In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional debt cancellation agreement for coverage of the gap amount may be offered for an additional charge.

   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      - The vehicle and all parts or goods put on it;
      - All money or goods received (proceeds) for the vehicle;
      - All insurance, maintenance, service, or other contracts we finance for you; and
      - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

      This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract.
      Default means:
      - You do not pay any payment on time;
      - You give false, incomplete, or misleading information during credit application;
      - The vehicle is lost, damaged, or destroyed; or
      - You break any agreements in this contract.

      The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle.

we will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on page 1 of this contract, not to exceed the highest rate permitted by law, until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
   **If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

5. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
   **Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

6. **SERVICING AND COLLECTION CONTACTS**
   In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.
   You agree that you will, within a reasonable time, notify us of any change in your contact information.

7. **APPLICABLE LAW**
   Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

8. **WARRANTIES OF BUYER**
   You promise you have given true and correct information during your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

9. **NEGATIVE CREDIT REPORT NOTICE**
   **We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

**CREDIT DISABILITY INSURANCE NOTICE**
**CLAIM PROCEDURE**
If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.
If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.
If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.
If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

T866960663-DP866960664 - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC.
Filed 09/19/25        Case 25-24357        Doc 15

### Seller's Right to Cancel

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take some time for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the contract.
b. Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to cancel. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.
c. If you do not immediately return the vehicle, you shall be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.
d. While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you shall assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

### ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this transaction was originated. We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of the chosen arbitration organization. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate any related or unrelated claims by filing any action in small claims court, or by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual or statutory public injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. You agree that you expressly waive any right you may have for a claim or dispute to be resolved on a class basis in court or in arbitration. If a court or arbitrator finds that this class arbitration waiver is unenforceable for any reason with respect to a claim or dispute in which class allegations have been made, the rest of this Arbitration Provision shall also be unenforceable.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Filed 09/19/25    T866960663-DP866960664 - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC.    Case 25-24357    Doc 15

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X **F** _KEgan_    Co-Buyer Signs X **F** _KEgan_

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on page 5 of this contract giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

Buyer X **G** _KEgan_    Co-Buyer X **G** _KEgan_

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
   WARNING:
   YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
   FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
   THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X **H** _KEgan_    X **H** _KEgan_

N/A

Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X **I** _KEgan_    Co-Buyer Signature X **I** _KEgan_

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON PAGE 5, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X **J** _KEgan_ Date 12/28/2023    Co-Buyer Signature X **J** _KEgan_ Date 12/28/2023
Buyer Printed Name LIQUID SKY ENTERTAINMENT, INC.    Co-Buyer Printed Name KIMBERLY EGAN
If the "business" use box is checked in "Primary Use for Which Purchased": Print Name KIMBERLY EGAN    Title CEO

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X N/A    Address N/A

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.
Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X N/A    Date N/A    Guarantor X N/A    Date N/A
Address N/A    Address N/A

Seller Signs GPI SAC-T, INC.    Date 12/28/2023    By X **K** _MS_    Title Finance Prod

Seller assigns its interest in this contract to Toyota Financial Services.    (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse    ☒ Assigned without recourse    ☐ Assigned with limited recourse
Seller GPI SAC-T, INC.
By X **L** _MS_    Title Finance Producer

**LAW** FORM NO. 553-CA-ARB-ea (REV 3/23)
©2023 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

LAW 553-CA-ARB-ea 3/23 v1    Page 6 of 6

T866960663-DP866960664 - THIS CUSTOMER COMPLETED COPY WAS CREATED ON 01/02/2024 10:20:38 PM GMT

Exhibit B



Exhibit "B"

# Title Details - 5TFNC5DBXRX050706

Back

## Title Information

| | |
|---|---|
| ███████5853██████ | Account No: |
| LIQUID SKY ENTERTAINMENT | Customer: |
| 5TFNC5DBXRX050706 | VIN: |
| CA | Issue State: |
| M3517499 | Batch No: |
| | Title Number: |
| | PA Lien Date: |
| DISPOSITION PERFECT | Title Status: |

Electronic Title

## Discrepant Information

Owners:

**LIQUID SKY ENTERTAINMENT INC**

**LIQUID SKY ENTERTAINMENT**

Co-Owners:

**EGAN KIMBERLY**



INC

Lienholder:

TMCC/LEXUS ELT

JTQ

TOYOTA MOTOR CREDIT COMPANY

VIN:

5TFNC5DBXRX050706

5TFNC5DBXRX050706

Vehicle Year:

2024

2024

## User Information

Corrected By:
Manual By:
Dispositioned By:
AUTOMTCH

Back

© 2025 - Secure Title Administration, Inc.

Exhibit C




## ACCOUNT HISTORY

**Customer Name:** Liquid Sky Entertainment, Inc  
**Account Number:** ####6853  
**Vehicle:** 2024 Toyota Tundra Hv  
**Date:** August 27, 2025

Not an Attempt to Collect a Debt, for Information Purposes Only

Exhibit "C"

| # | DATE PAID | PAYMENT AMOUNT | INTEREST PAID | PRINCIPAL PAID | LATE CHARGES & MISC FEES ASSESSED | LATE CHARGES & MISC FEES PAID | LOAN BALANCE | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | $74,140.57 | Starting Balance |
| 1 | 2/15/2024 | $1,400.00 | $956.49 | $443.51 | | $0.00 | $73,697.06 | |
| 2 | 2/15/2024 | -$1,400.00 | -$956.49 | -$443.51 | | | $74,140.57 | Payment Reversal |
| 3 | 2/22/2024 | | | | $68.22 | | $74,140.57 | |
| 4 | 3/22/2024 | | | | $68.22 | | $74,140.57 | |
| 5 | 3/28/2024 | $1,364.42 | $1,364.42 | $0.00 | | $0.00 | $74,140.57 | |
| 6 | 3/28/2024 | $100.00 | $0.00 | $0.00 | | $100.00 | $74,140.57 | Waived Late Charges |
| 7 | 4/23/2024 | | | | $68.22 | | $74,140.57 | |
| 8 | 5/22/2024 | | | | $68.22 | | $74,140.57 | |
| 9 | 5/29/2024 | $1,364.42 | $1,364.42 | $0.00 | | $0.00 | $74,140.57 | |
| 10 | 6/22/2024 | | | | $68.22 | | $74,140.57 | |
| 11 | 7/23/2024 | | | | $68.22 | | $74,140.57 | |
| 12 | 8/22/2024 | | | | $68.22 | | $74,140.57 | |
| 13 | 9/24/2024 | | | | $68.22 | | $74,140.57 | |
| 14 | 10/22/2024 | | | | $68.22 | | $74,140.57 | |
| 15 | 10/29/2024 | $513.98 | $0.00 | $0.00 | | $513.98 | $74,140.57 | Waived Late Charges |
| 16 | 11/1/2024 | $77,443.50 | $3,302.93 | $74,140.57 | | $0.00 | $0.00 | Charged Off |
| | | $80,786.32 | $6,031.77 | $74,140.57 | $613.98 | $613.98 | | |
| | | | | | | | $74,140.57 | Charged Off |
| 1 | 11/1/2024 | -$3,302.93 | -$3,302.93 | $0.00 | | | $77,443.50 | Loan Balance Increase |
| | | -$3,302.93 | -$3,302.93 | $0.00 | $0.00 | $0.00 | | |

The current balance is $77,443.50

·· PROTECTED 関係者外秘

# J.D. POWER

9/3/2025

**J.D. POWER Used Cars/Trucks**

Exhibit "E"

## Vehicle Information



| | |
|---|---|
| **Vehicle:** | 2024 Toyota Tundra Crew Cab Platinum 4WD 3.5L V6 Turbo Hybrid |
| **Region:** | California |
| **Period:** | September 3, 2025 |
| **VIN:** | 5TFNC5DBXRX050706 |
| **Mileage:** | 27,500 |
| **Weight:** | 6,095 |

## J.D. POWER Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Clean Retail | $64,700 | N/A | N/A | **$64,700** |

### Selected Options

| | Trade-In/Loan | Retail |
|---|---|---|
| Blind Spot Monitor | w/body | w/body |
| Rear Parking Sensors | w/body | w/body |
| Aluminum/Alloy Wheels | w/body | w/body |
| Power Driver's Seat | w/body | w/body |
| Power Passenger Seat | w/body | w/body |
| Advanced Pkg. | w/body | w/body |
| Heated Front Seats | w/body | w/body |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D.Power